IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LISA GAYNELL HARRIS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MARTIN O'MALLEY,[1] ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Case No. 1:22-CV-571-RAH-KFP |

**<u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this action seeking a third judicial review of the Social Security Administration's decision to deny her application for disability insurance benefits (DIB). The Court construes Plaintiff's supporting brief (Doc. 16) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 19) as a motion for summary judgment. After scrutiny of the record and the parties' submissions, the undersigned RECOMMENDS that Plaintiff's motion be DENIED, the Commissioner's motion be GRANTED, and Commissioner's decision be AFFIRMED.

**I.    STANDARD OF REVIEW**

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and whether the correct legal standards

---

[1] Martin O'Malley is now the Commissioner of Social Security and is automatically substituted as a party under Rule 25(d) of the Federal Rules of Civil Procedure. *See also* 42 U.S.C. § 405(g) (providing that action survives regardless of change in person occupying office of Commissioner of Social Security).

were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is more than a scintilla but less than a preponderance. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## II.     FACTUAL BACKGROUND

Plaintiff was a member of the United States Army for almost twenty-two years from October 1990 through May 2012 and worked as a postal clerk and a human resources clerk. R. 50, 202. She retired honorably from the military in May 2012. Doc. 16 at 3. She applied for social security disability benefits in September 2012, alleging disability as of May 2012 due to diabetes mellitus, migraine headaches, right should/neck pain, lumbago, bilateral knee pain, eczema, gastroesophageal reflux, irritable bowel syndrome, an adjustment disorder, insomnia, a fibroid uterus, allergic rhinitis, a history of frostbite in the feet, tinnitus, high blood pressure, high cholesterol, and acid reflux.[2] R. 174, 196, 200; Doc. 16 at 1. Plaintiff's date last insured for DIB was December 31, 2017. R. 524.

---

[2] Plaintiff also completed a second DIB application on October 3, 2016, alleging a disability onset date of April 25, 2014. R. 2016. Both cases have been consolidated. R. 1919. Additionally, because Plaintiff applied for benefits before March 27, 2017, the new regulations adopted by the Social Security Administration on that date do not apply.

### A.     Veteran's Administration Disability Rating

At some point before or in conjunction with her military retirement, Plaintiff applied for disability benefits from the Veteran's Administration and received a 90% disability rating. R. 190–91. In July 2012, shortly after her retirement, she applied for an increased disability rating (*see* R. 189, 6507), and in September 2013 the VA assigned her a permanent 100% disability rating. R. 189–95, 2033–2050, 6507–6524.

The 90% disability rating was based on individual disability ratings of 30% for anxiety, irritable bowel syndrome, and migraine headaches; 20% for neck strain, low back strain, and diabetes; and 10% for right carpal tunnel syndrome, bilateral knee strains, bilateral hip strains, tinnitus, and bilateral frostbite in her feet. R. 190–91.

The 100% disability rating was based on additional 10% ratings for bilateral lower extremity diabetic neuropathy and a right shoulder strain, a 30% rating for a partial hysterectomy, and increases in the ratings for her anxiety (from 30% to 70%), neck strain (from 20% to 30%), and carpal tunnel (from 10% to 30%). R. 190–91.

### B.     Social Security Disability Benefits Application History

In 2014, Plaintiff's application for social security disability benefits was denied at the administrative level. She had a hearing before an ALJ, who issued an unfavorable decision finding her not disabled. The Appeals Council denied a request for review, Plaintiff sought judicial review, and in 2017 this Court remanded the case for further evaluation of the VA's 100% disability rating. In 2019, Plaintiff had a second hearing before an ALJ, who issued another unfavorable decision. After another denial by the Appeals Council and a second judicial appeal, this Court remanded the case again, finding

3

the ALJ still had not properly considered the evidence underlying the VA's disability rating. On remand, the ALJ held a third hearing in November 2021, held a supplemental hearing in April 2022 where a medical expert testified, and issued an unfavorable decision in May 2022. The instant case is Plaintiff's appeal of that decision.

### III.   ISSUES ON APPEAL

Plaintiff argues remand is necessary because the ALJ (1) ignored the medical evidence supporting the VA's 100% disability rating and (2) failed to properly assess her RFC because he (a) ignored her carpal tunnel syndrome, (b) failed to consider evidence of her use of a cane, and (c) ignored functional limitations of a state agency psychologist whose opinion he assigned significant weight.

### IV.   DISCUSSION

#### A.   VA Disability Rating

As the Eleventh Circuit has long instructed, a disability rating from the VA is "evidence that should be given great weight." *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984) (per curiam) (citations omitted). Although "great weight" does not mean controlling weight, "the ALJ must seriously consider and closely scrutinize the VA's disability determination and must give specific reasons if the ALJ discounts that determination." *See Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x 902, 904 (11th Cir. 2016) (citing *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981)). This is particularly true when the VA gives a 100% disability rating. *Id.* (stating that VA rating of 100% disability should be more closely scrutinized by ALJ). Summarily rejecting a VA

disability rating because it is non-binding and relies on different criteria constitutes legal error. *Id.* at 904.

1. **The Second ALJ Decision**

As part of Plaintiff's application for increased disability benefits with the VA, a compensation and pension (C&P) evaluation was conducted in August 2013. R. 10763–864. The physical portion of the C&P evaluation was prepared by an ambulatory nurse practitioner, and the mental portion was prepared by a C&P psychologist. R. 10763, 10860, 10864. In his decision following Plaintiff's second administrative hearing, the ALJ stated as follows regarding the VA's 100% disability rating:

> The undersigned has considered the claimant's VA disability rating . . . in formulating the [RFC]. The VA assigned the claimant a permanent 100% disability rating for her service-connected disabilities. The claimant was denied individual unemployability because the evidence does not show that she is unable to secure or follow a substantially gainful occupation as a result of her service-connected disabilities[.] The undersigned gives great weight to the VA finding that the claimant has some functional limitations related to her impairments. However, a decision by another government agency about whether the claimant is disabled is based on its own rules and is not binding on the [SSA].

T. 534. The ALJ then described in a broad manner how the VA standards differ from those of the SSA, but he failed to discuss the C&P examination. *Id.* at 534–35. Thus, the Court found the ALJ did not properly address the underlying evidence supporting the VA's determination, leaving the record unclear whether the ALJ closely scrutinized the VA's determination and the basis on which he discounted the VA's rating. *See Brown-Gaudet-Evans*, 673 F. App'x at 904 (stating the VA's reliance on different criteria than the SSA "does not mean that the ALJ can summarily ignore the VA's determination"); *Williams*,

2018 WL 1321275, at *3 (stating that, "[a]lthough VA disability standards are lower than the Commissioner's standards, the ALJ must still consider the VA's disability rating and cannot reject it based on mere fact that it is not binding") (citation omitted).

### 2. The Third ALJ Decision

The third ALJ decision is now before the Court, and Plaintiff again contends the ALJ ignored the medical evidence supporting the VA's 100% disability rating. This time, the Court disagrees. In his decision, the ALJ first addressed Plaintiff's VA medical treatment and the VA disability rating as follows:

> The VA treatment was also still rather limited even after this point when she alleges she became disabled. The record shows a consult to obtain diabetic socks and diabetic [shoes] thereafter if she needed them (Exhibit 5F/14, 20). She was rated as 90% disabled during this period by the VA, but notably, the proportion of the rated disabilities was all below 30% on an individual basis. Her headaches and anxiety were 30% as well as "irritable colon" but her back impairments and diabetes were 20% with everything else 10% or even 0% (Exhibit 5F/17-18). Shortly thereafter it was raised to 100%, but again, 30 [%]was the highest percent, which was rated for her recent hysterectomy (Exhibit 9F).
>
> With regard to her lower extremity issues, she was noted to be "asymptomatic" now in November 2012 after the previous avulsion fracture (Exhibit 5F/21-22). She had a knee sleeve provided, but this record shows that there was no appreciable muscle weakness or sensory deficit in either limb (Exhibit 5F/25).
>
> However, the records in 2013 still document largely similarly conservative treatment. She had prosthetics requests for a knee sleeve, glasses, TENS, a heating pad, and an adjustable cane (Exhibit 6F). She did have the compensation and pension (C&P) examinations associated with her change in the VA rating, but these largely note her subjective pain complaints and, as already noted, resulted in, despite the raise to 100%, very similar ratings of 30% or less on an impairment by impairment basis (Exhibits 27F and 9F).

R. 6257–58; *see also* R. 190–91.

The Court previously found the second ALJ decision, which contained no reference to the C&P examination, left the record unclear as to whether the ALJ had considered all of the evidence underlying the VA's decision and whether, once considered, that evidence would have changed the ALJ's decision. In the quoted passage above, the ALJ notes that Plaintiff received limited treatment at the VA while under a 90% disability rating; explains that her 90% disability rating was based on conditions that were rated individually at 30% or less; notes that her rating was raised to 100% but was again based on individual ratings of 30% or less; describes how her lower extremity issues in the November following her alleged onset date were "asymptomatic" with records showing no appreciable muscle weakness or sensory deficit in either limb; and describes how her 2013 medical records documented conservative treatment. He then specifically addresses the C&P examination, explaining that it was based largely on Plaintiff's subjective complaints and, despite resulting in a 100% disability rating, was still based on lower individual ratings. Thus, there is no question the ALJ considered the C&P examination, and there is no question why he discounted it. Plaintiff may disagree with the ALJ's conclusions, but the ALJ clearly considered the C&P and gave specific reasons for discounting it.

Plaintiff seems to suggest the C&P was the sole basis of the VA's disability rating, as she ignores the ALJ's detailed discussion of the underlying VA medical records supporting the ALJ's findings. The VA rating report expressly identifies the medical records on which it was based, including Plaintiff's service treatment records through May 2012 and Lyster Army Health Clinic records from March 2013 (R. 6509), and it is clear from the ALJ's decision that he considered the relevant evidence from these records.

For example, although Plaintiff has a May 2012 alleged onset date, the ALJ noted that the record contains medical records dating back to 2008, and he discussed how the records from 2008 through 2012 showed conservative treatment for diabetes in addition to normal, routine examinations; a lumbar spine x-ray that was normal; treatment for her "headache syndrome" consisting of injections; a cervical MRI and an eventual shoulder impingement diagnosis resulting in referral to an orthopedist but no restrictions from work; a knee x-ray that showed only mild degenerative changes; an ankle x-ray that showed a previous avulsion fracture but no evidence of complications; another lumbar spine x-ray showing "early" changes at L4; and reported pain levels of 0/10 in April, August, and September 2012. R. 6255–56.

The ALJ went on to discuss VA medical records from 2012 showing that Plaintiff complained of "occasional numbness and tingling" at a diabetic foot exam in October 2012 and a recent fracture that had been treated with a cam walker but that was asymptomatic (R. 399–400); ankle pain in April 2012 that was "doing well" with "no pain" in August 2012; and diabetes treated with oral medications and only a limited indication of specific complications or substantial blood sugar fluctuations.[3] R. 6256. He then discussed her 2012 VA headache records, showing one headache caused by an upper respiratory infection and sinus pressure in July 2012, another headache in September 2012 relieved with rest and no medications, and records from December 2012 showing she was taking Immitrex for

---

[3] During this same discussion, in addition to the VA medical records, the ALJ discussed evidence from a consultative examination in October 2012 where Plaintiff exhibited normal coordination, gait, low back TTP, and ranges of motion; good mobility; negative straight leg raises; normal grip strength; no motor or sensory deficits; and no instability in her knees or ankles. R. 371–74, 6256–57.

headaches. R. 6257. Finally, he discussed in detail her medical records from 2014 through February 2017 related to her knee, back, and mental health complaints, including another consultative examination in January 2017, where the examiner found she had normal strength in all muscle groups and no limp or instability, causing him to question whether she was supposed to be using a cane. R. 6257–59. The ALJ also discussed lumbar and hand x-rays during this time, which were negative, and lumbar and cervical MRIs that were "mild and limited." R. 6259.

Thus, the Court finds the ALJ "seriously considered and closely scrutinized" the VA's disability determination and gave specific reasons for discounting that determination. *See Brown-Gaudet-Evans*, 673 F. App'x at 904. He expressly referenced and described the VA's decision, explaining that he discounted it because it was based on individual ratings that did not exceed 30%. He discussed the C&P examination report, explaining that he discounted it because it was based primarily on Plaintiff's self-reported conditions,[4] and he discussed in detail Plaintiff's unremarkable medical records demonstrating the limited and conservative treatment received for her conditions. For these reasons, the undersigned is satisfied that the ALJ did not err in his consideration of the C&P examination report and that he properly considered all of the evidence underlying the VA's disability rating. *See*

---

[4] In her brief, Plaintiff reports some of her statements to the VA during the C&P examination as "conclusions" by the VA. For example, Plaintiff states, "The VA concluded that Ms. Harris had to lie down and had difficulty concentrating due to her headaches." Doc. 16 at 7. However, the cited portion of the record states, "She reports intermittently she has to lie down with the above headaches. She has problems concentrating on tasks with the headaches." R. 5223. Similarly, Plaintiff states, "She had fecal urgency due to her intestinal conditions," but the cited portion of the record states, "She reports problems with fecal urgency during episodes of diarrhea and she has to be aware of location of bathrooms through the week." Doc. 16 at 7, R. 5231.

9

*Boyette v. Comm'r of Soc. Sec.*, 605 F. App'x 777, 779–80 (11th Cir. 2015) (finding no error when ALJ failed to give VA's determination great weight or consideration because ALJ correctly noted that VA disability determination is guided by different factors than for SSA disability and where VA treatment notes and examining doctor's opinions supported RFC assessment); *Ostborg v. Comm'r of Soc. Sec.*, 610 F. App'x 907, 914–15 (11th Cir. 2015) (affirming where substantial evidence supported the ALJ's RFC and credibility determinations and ALJ's specific reasons for discounting VA's determination show he considered and closely scrutinized that determination); *Adams v. Comm'r of Soc. Sec.*, 542 F. App'x 854, 857 (11th Cir. 2013) (affirming where ALJ did not expressly state he gave great weight to VA's rating but record showed he expressly considered and closely scrutinized it).[5]

### B.   Plaintiff's RFC Determination

Plaintiff next contends the ALJ improperly determined Plaintiff's RFC because he failed to consider additional impairments and limitations relating to her carpal tunnel

---

[5] *See also Barker v. Berryhill*, No. 2:17-CV-365-GMB, 2018 WL 4996888, at *3 (M.D. Ala. Oct. 15, 2018) (finding ALJ's determination that VA's decision had little bearing on social security claim not reversible error where ALJ's "specific reasons for discounting the VA's determination showed he considered and closely scrutinized that determination") (citation omitted); *Rainwater v. Colvin*, No. 5:16-CV-61-MTT-CHW, 2017 WL 1172130, at *6 (M.D. Ga. Jan. 19, 2017), *report and recommendation adopted sub nom. Rainwater v. Berryhill*, No. 5:16-CV-61 (MTT), 2017 WL 1159099 (M.D. Ga. Mar. 28, 2017) (finding no error even when ALJ failed to explicitly assign weight to VA rating because ALJ scrutinized and assigned weight to supporting evidence and decision was supported by substantial evidence) (citations omitted); *Abel v. Astrue*, No. 2:10-CV-566-36-DNF, 2011 WL 7447394, at *6 (M.D. Fla. Dec. 29, 2011), *report and recommendation adopted,* No. 2:10-CV-566-FTM-UA, 2012 WL 695666 (M.D. Fla. Mar. 5, 2012) (finding ALJ properly considered VA's assessment and underlying evidence because ALJ specifically referred to rating and cited VA's treatment records throughout h decision, discounted VA's disability rating because standards were more lenient, and considered that plaintiff's doctors did not opine that she experienced restrictions greater than those assessed by state agency physicians).

syndrome, her use of a cane, and a state agency psychologist's limitations relating to "short and simple instructions/tasks" and criticism from an employer. Doc. 16 at 4, 9–13.

### 1. Carpal Tunnel Syndrome

With respect to Plaintiff's carpal tunnel syndrome, at the first ALJ hearing Plaintiff testified that "sometimes, [she] cannot use [her] right hand." R. 59. At her third hearing she testified that she "continued to have the diagnosis." She also testified that the condition affects her three or four times a month, when her hand will "lose shape" and cause her to take a "a couple of minutes" to reshape it. R. 59, 6310. In contending the ALJ failed to consider evidence relating to her carpal tunnel syndrome, Plaintiff points to (1) her C&P examination, where she reported "mild" paresthesia or dysesthesia and numbness in her right upper extremity (R. 10797); a September 2013 notation in her medical records showing that a nurse practitioner signed off on a handicap tag form after EMG testing confirmed carpal tunnel syndrome through evidence of "mild" right median neuropathy (R. 10762); her testimony that she wears a brace on her right arm (R. 1835); her report on the C&P examination that she would have trouble writing or keyboarding (R. 10855); and the VA's assessment of a 30% disability for carpal tunnel syndrome (R. 6508). *See* Doc. 16 at 10.

The ALJ did consider all of Plaintiff's alleged impairments when making a determination that she was not disabled. The ALJ did not specifically mention "carpal tunnel" in his decision, but he stated he had considered all impairments "both alone and in

combination with other impairments."[6] R. 6251. The Eleventh Circuit has stated that this language is sufficient to show the ALJ properly considered all alleged impairments when making a disability determination. *See Grays v. Colvin*, No. 5:13-CV-818-LSC, 2015 WL 260845, at *4 (N.D. Ala. Jan. 21, 2015) (citing *Wheeler v. Heckler,* 784 F.2d 1073, 1076 (11th Cir. 1986) (finding ALJ "clearly considered the combination [of impairments] at issue" when he stated that "'based on a thorough consideration of all evidence . . . the appellant is not suffering from any impairment, *or a combination of impairments* . . . to prevent him from engaging in any substantial gainful activity'") and *Heatly v. Commissioner of Social Sec.,* 382 F. App'x 823, 825 (11th Cir. 2010) (stating that "a simple expression of the ALJ's consideration of the combination of impairments constitutes a sufficient statement of findings")).

Moreover, although it appears undisputed that Plaintiff has "mild right median neuropathy" in her right hand and that the record reflects a diagnosis of carpal tunnel syndrome, a diagnosis alone is insufficient to establish functional limitations caused by a condition. *Levie v. Berryhill*, 757 F. App'x 834, 837 (11th Cir. 2018) (stating diagnosis insufficient to support finding of disability but must be accompanied by evidence of functional limitation) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212−13 (11th Cir. 2005) (per curiam)). Although Plaintiff claims she would have difficulty writing or keyboarding, she points to no medical evidence supporting this specific functional limitation—or any

---

[6] The ALJ also considered whether Plaintiff met the requirements of Listing 1.18, relating to joint abnormality, and stated that he considered Plaintiff's symptoms to the extent they could reasonably be accepted as consistent with the objective medical evidence and other evidence. R. 6251, 6254.

other limitation—caused by carpal tunnel syndrome. She has offered no evidence that she was ever treated for carpal tunnel syndrome excepting her one request of a splint in October 2012. R. 396–97, 423. At her C&P examination in 2013, she reported having numbness and tingling in her right wrist in 2000 and being prescribed motrin and splints in 2012 (R. 10846), but the C&P examination also shows that her wrist flexion, extension, grip, and pinch were all normal (R. 10796–97, 10848). As for her reported use of a brace, she was not wearing one at her first hearing, but at the second hearing the ALJ noted she was. R. 1823. Also at the second hearing, Plaintiff's attorney conceded there was no treatment for carpal tunnel syndrome in her records and that her "all-over joint pain" was related to her back and knee (R. 1823–24),[7] and Plaintiff testified that she helped run a clothing closet at her church in 2016, where she would collect the clothes, sort them by size and gender, and hand them out one Saturday per month. *Id*. at 1829–31.

The ALJ's decision contains a detailed discussion of Plaintiff's medical history. He specifically mentions the medical records relating to Plaintiff's hands and wrists, noting the "normal grip strength" and "normal strength, including grip" findings in the October 2017 consultative examination and the "normal strength in all muscle groups, including *even in the hands*" from the January 2017 consultative examination. R. 373–74, 2790, 6257–59 (emphasis added). Furthermore, the medical expert who testified at Plaintiff's ALJ hearing did not list carpal tunnel syndrome as an impairment "demonstrable by medically acceptable clinical or laboratory or diagnostic techniques," testified that her

---

[7] After this concession by her attorney, Plaintiff testified that she wore the wrist brace "everyday and every night" and had been doing so for about a year. R. 1835.

impairments did not meet or equal a listing individually or in combination with other impairments, and testified that she has no restrictions on reaching, handling, fingering, or feeling. R. 6311–12.

Accordingly, the undersigned concludes that the RFC formulated by the ALJ is consistent with the medical evidence and that this evidence and Plaintiff's testimony constitute substantial evidence supporting the RFC. *See Grays v. Colvin*, No. 5:13-CV-818-LSC, 2015 WL 260845, at *4 (N.D. Ala. Jan. 21, 2015) (noting that mere diagnosis does not, by itself, prove limitations to claimant's ability to work and that ALJ did not err, as decision contained detailed discussion of plaintiff's alleged back pain and fibromyalgia, including medical records showing normal range of motion and strength and the ability to walk and squat normally); *Dumas v. Colvin*, No. 12-CV-518-N, 2013 WL 4523584, at *13 (S.D. Ala. Aug. 27, 2013) (holding ALJ's determination was consistent with medical opinions and plaintiff's own statements, substantial evidence supported ALJ's assessment of functional limitations, and plaintiff's reliance on mere diagnoses, without resultant functional limitations, was insufficient); *Ridinger v. Astrue*, No. 3:11-CV-1149-LSC, 2012 WL 3542238, at *5 (N.D. Ala. Aug. 14, 2012) (stating mere diagnosis of diabetes was insufficient to establish functional limitations due to that condition) (citing *Johns v. Bowen,* 821 F.2d 551, 555 (11th Cir. 1987) (noting that mere diagnosis of polymyalgia rheumatica says nothing about why condition makes it impossible for claimant to be gainfully employed)).

### 2.      Plaintiff's Use of a Cane

Plaintiff next argues the ALJ erred in failing to consider evidence supporting her use of a cane. She points to a medical opinion from 2019 stating the cane was required for ambulation, the C&P report describing Plaintiff as having a mild limp and using a cane, the January 2017 consultative examination showing she uses a cane, and the fact that Plaintiff obtained a cane from the VA in 2013 and again in 2021.

First, Plaintiff is incorrect that the ALJ failed to consider the above evidence. He did not specifically mention Plaintiff's reported use of a cane in the C&P report, but he discussed the 2017 consultation examination, the 2019 medical opinion, and Plaintiff's having acquired a cane from the VA in 2013 before undergoing knee surgery in 2015.

Second, "[u]nder a substantial evidence standard of review, [claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)). Plaintiff relies on bits of evidence supporting her use of a cane, but this evidence does not negate the substantial evidence supporting the ALJ's conclusions.

With respect to the 2019 medical opinion stating Plaintiff would need a cane for *occasional* standing or walking (R. 13856), the ALJ rejected the opinion because it was completed years after the latest onset date and because the doctor opined Plaintiff could walk less than one block without rest. R. 13855. The ALJ correctly noted that the opinion

15

was inconsistent with the medical expert who testified at the hearing[8] and, most notably, with Plaintiff's own testimony that she could walk up to 15 or more minutes at a time.[9] R. 6288. Additionally, although the C&P report documents Plaintiff's reports of regular cane use, the same document reflects only occasional use in multiple locations (R. 10828, 10854, 10859) and problems with *extended* walking (R. 10829). Finally, although Plaintiff used a cane at the January 2017 consultative examination, the doctor performing the examination found that Plaintiff had no limp, no instability in her knees, normal strength in all muscle groups, no tenderness to palpation, and no positive straight leg raising test, leaving him to question whether she was supposed to be using the cane.

Again, Plaintiff must do more than "point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims*, 706 F. App'x at 604. Plaintiff cannot do so here, as her testimony, the C&P examination, the January 2017 consultative examination, the remaining medical records, and the medical expert testimony at the ALJ hearing constitute substantial evidence supporting the RFC. Therefore, the Court finds the ALJ did not err with respect to his consideration of Plaintiff's need for a cane.

---

[8] The medical expert testified Plaintiff could stand and walk together for around six hours and that she had only "occasional" postural limitations, except for climbing ladders, scaffolds, or ropes, which she cannot do. R. 6312.

[9] Plaintiff also testified at the first hearing that she did chores around the house for 15-20 minutes before quitting due to knee and back pain and that she did her own clothes shopping and grocery shopping, which she said took *an hour and a half to two hours*, without the assistance of a battery-powered cart. R. 54–55. At her second hearing, she again testified that she does her own laundry and cleans her own kitchen, including washing dishes, washing down counters, cleaning out the refrigerator, sweeping, and mopping, for 15 minutes before having to sit down for 30 minutes. R. 1826–27. She testified that she can stand for only 20 minutes but that it was because of her lower back pain. *Id*. at 1833. When asked if she was "having much trouble her [her] knees," she stated she did "[e]very now and then" and it was not an "every day type thing." *Id*. at 1834.

### 3. Functional Limitations by State Agency Psychologist

Finally, Plaintiff argues the ALJ ignored specific functional limitations offered by Joanna Koulianis, a state agency consultant whose opinion he found was entitled to significant weight. Dr. Koulianis opined Plaintiff could understand, remember, and carry out "short and simple instructions/tasks" and that "criticism from [an] employer should be specific and given in a constructive manner."[10]

Plaintiff seemingly argues the ALJ was bound to accept Dr. Koulianis's limitations because he gave the opinion "significant weight." R. 1893–94. The ALJ actually stated he was providing Dr. Koulianis's opinions "some weight" because they were generally consistent with the treatment evidence, meriting "significant persuasive effect," and generally consistent with the evidence and well supported by documented evidence from the record. R. 6262. However, regardless of the weight assigned, the law is well settled that an RFC need not be supported by a medical opinion to find it supported by substantial evidence. *Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016). So

---

[10] Plaintiff's brief addresses the distinction between short and simple instructions but makes no further reference regarding employer criticism. Plaintiff's cursory mention of this issue is insufficient for the Court to consider the argument, and it is deemed waived. *United States v. ADT Sec. Servs., Inc.*, 522 F. App'x 480, 488 (11th Cir. 2013); *In re Globe Mfg. Corp.,* 567 F.3d 1291, 1297 n.3 (11th Cir. 2009) (cursory briefing of argument deemed waived); *Rowe v. Schreiber,* 139 F.3d 1381, 1382 n. 1 (11th Cir.1998) (acknowledging issue in briefing without argument deemed abandoned).

long as substantial evidence supports the RFC determination, the Court must affirm. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also* 42 U.S.C. § 405(g).

Although the ALJ found Dr. Koulianis's opinions generally consistent with treatment records, of significant persuasive effect, and due some weight, he was not required to adopt every restriction she suggested. *Boris v. Comm'r of Soc. Sec.*, No. 5:15-CV-434-OC-PRL, 2016 WL 4651377, at *4 (M.D. Fla. Sept. 7, 2016) (in case where ALJ accepted some limitations but did not adopt the entire opinion, finding ALJ did not err because RFC need not mirror opinion of every doctor and ALJ not required to adopt all limitations a doctor assessed (citing *Castle v. Colvin*, 557 Fed. App'x 849, 853 (11th Cir. 2014)); *Norman v. Berryhill*, No. 1:17-CV-97-MW-GRJ, 2018 WL 3097568, at *8 (N.D. Fla. June 7, 2018), *report and recommendation adopted,* No. 1:17CV97-MW-GRJ, 2018 WL 3097549 (N.D. Fla. June 22, 2018) (noting that plaintiff appeared "to insist that the ALJ was required to adopt all of the limitations included in the various opinions" but that ALJ must only state weight given to each opinion and why).

In his decision, the ALJ pointed out that Plaintiff's memory was generally normal; medical evidence indicated the ability to follow medical advice and a prescribed treatment regimen; treatment notes show she can provide "relatively detailed" employment and medical histories; there is no documented history of intellectual or cognitive difficulties; she interacts appropriately with medical providers without problems; there are no indications she has problems responding or maintaining thought processes; she can concentrate and focus better with medications but there are no indications of a need for redirection or difficulty when attempting to maintain conversations; and there are no

indications of deficits in the overall concentration or attention during examinations. R. 6252.

Additionally, the Court notes that Plaintiff testified at her second hearing that she had problems with one person up the chain of command while in the military but did not get "written up much for insubordination or anything" and stayed in long enough to retire. R. 1843–44. During the C&P examination, it was noted that Plaintiff was "currently attending college" and taking "general studies" classes. R. 10765. This evidence—the ability to complete detailed forms, interact with treatment professionals, and attend college, coupled with the lack of any evidence of an intellectual or cognitive difficulty—constitutes substantial evidence supporting the ALJ's decision to reject the restriction to "short" instructions.

As with Plaintiff's other arguments concerning the ALJ's treatment of her carpal tunnel syndrome and her use of a cane, because Plaintiff has not done no more than "point to evidence in the record that supports her position," without showing "the absence of substantial evidence supporting the ALJ's conclusion," her claims with respect to the RFC fail. *Sims*, 706 F. App'x at 604. Although Plaintiff's cited evidence may support greater restrictions, this Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's factual findings. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## V. CONCLUSION

Because the undersigned finds that the ALJ properly considered the VA's disability rating, including all of the evidence underlying the rating, and that substantial evidence supports the RFC, undersigned RECOMMENDS that Plaintiff's motion for summary judgment (Doc. 16) be DENIED, the Commissioner's motion for summary judgment be GRANTED (Doc. 19), and the Commissioner's decision be AFFIRMED.

Further, it is ORDERED that by **March 19, 2024**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3–1.

DONE this 5th day of March, 2024.

/s/ Kelly Fitzgerald Pate  
KELLY FITZGERALD PATE  
UNITED STATES MAGISTRATE JUDGE